Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BANCO POPULAR DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>JOSÉ A. VELÁZQUEZ GRAU; EILEEN RUIZ FERNÁNDEZ Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Peticionario | KLCE202400686 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca por la vía ordinaria<br><br>Caso Núm.:<br>E CD2013-0312 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Adames Soto, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Rodríguez Casillas, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de septiembre de 2024.

Comparece, el Sr. José Ángel Velázquez Grau (en adelante: "señor Velázquez Grau" o "peticionario–codemandado") mediante el auto de *certiorari* epígrafe. Nos solicita la revisión de la *Resolución* emitida el **10 de abril de 2024**,[1] por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante: "TPI"). En esta, el TPI determinó que el señor Velázquez Grau, la esposa Sra. Eileen Ruiz Fernández y la Sociedad Legal de Gananciales compuesta por ambos (en adelante: "señora Ruiz Fernández" o en conjunto "parte demandada") adeudaban la suma total de $276,685.91 a Banco Popular de Puerto Rico (en adelante; "BPPR o recurrido– demandante").

---

[1] Notificada el 11 de abril de 2024.

Oportunamente, el señor Velázquez Grau solicitó la reconsideración de la determinación, sin embargo, la misma fue declarada *No Ha Lugar* el 14 de mayo de 2024.[2]

Evaluada la totalidad del expediente, resolvemos **denegar** el auto de *certiorari* solicitado. Veamos.

**-I-**

De los autos ante nuestra consideración, surge que el **6 de marzo de 2013** el BPPR instó una *Demanda* contra la parte demandada; entiéndase, el señor Velázquez Grau su esposa, la señora Ruiz Fernández y la Sociedad Legal de Gananciales compuesta por ambos.[3] Entre otras cosas, el banco solicitó que se condenara a la parte demandada a satisfacer solidariamente las deudas comerciales que estaban vencidas, líquidas y exigibles.[4]

En respuesta, la parte demandada sometió su escrito y reconvención el **13 de mayo de 2013**.[5]

El **27 de diciembre de 2013**, las partes presentaron conjuntamente un *"Acuerdo de Sentencia por Estipulación"*.[6] En lo pertinente, establecieron lo siguiente:

[…]

9. *El día 10 de octubre de 2006, la parte demandada suscribió un Pagaré #2557584-9002 por la suma principal de $160,000.00 a la orden del Banco Popular. Se acordó que el préstamo sería pagadero en 239 pagos mensuales consecutivos de $666.67 y un último pago de $665.87 todos más intereses, comenzando el día 10 de noviembre de 2006. Se acordó, también, que el balance insoluto de la Suma Principal devengará intereses a razón de una tasa fluctuante de 1.500% sobre la Tasa de Interés Primario y*

---

[2] Notificada el 20 de mayo de 2024.
[3] Anejo de la *Petición de Certiorari*, págs. 1 – 6.
[4] En la reclamación instada por BPPR, las sumas solicitadas fueron:
*(a) [D]el préstamo **2557584-9002** un balance principal de $118,868.34, más intereses al 22 de febrero de 2013 de $4,405.04, mas $321.71 de una escrow, más $25.58 de intereses que se devengan diariamente a partir del 23 de febrero de 2013;*
*(b) [D]el préstamo **2557584-9003** un balance principal de $56,690.13, más intereses al 22 de febrero de 2013 de $2,727.48, más $16.14 de intereses que se devengan diariamente a partir del 23 de febrero de 2013;*
*(c) [D]el préstamo **2557584-9004** un balance principal de $20,238.08, más intereses al 22 de febrero de 2013 de $945.01, más $5.76 de intereses que se devengan diariamente a partir del 23 de febrero de 2013.*
Véase; Anejo de la *Petición de Certiorari*, pág. 5.
[5] Anejo de la *Petición de Certiorari*, págs. 7 – 14.
[6] Anejo de la *Petición de Certiorari*, págs. 15 – 29.

*de ocurrir algún incumplimiento devengará intereses a razón de una tasa de interés fluctuante de 4.500% sobre la Tasa de Interés Primario.* [sic].

10. *Para garantizar el pago de lo adeudado, la demandada entregó en prenda el siguiente pagaré que la parte demandante tiene en su poder como acreedor pignoraticio:*

   **a.** *Pagaré suscrito por las partes codemandadas, José Ángel Velázquez Grau y Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández, por la suma principal de $160,000.00 con vencimiento A LA PRESENTACIÓN, pagadero a la orden del Banco Popular o a su Orden garantizado por Hipoteca en Garantía de Pagaré mediante Escritura Número 169 de fecha 10 de octubre de 2006, ante el Notario Público Carlos José Mangual Santiago.*

   *El pagaré descrito en este inciso grava la siguiente propiedad:*

   *---URBANA: Solar radicado en la Calle Doctor Rufo esquina a Betances, propiedad del Municipio de Caguas, antes, hoy propiedad de los hermanos Soto, compuesto por Ciento Treinta y Tres punto Sesenta y Ocho Metros Cuadrados (133.68 m/c). En lindes por el NORTE, en dos (2) alineaciones, una de nueve punto cero cero (9.00) metros y la otra de seis punto treinta y dos (6.32) metros, con el solar municipal ocupado por Isaac Newton; por el SUR, en quince punto setenta (15.70) metros con la Calle Betances; por el ESTE, en diez punto cero cero (10.00) metros, con el solar municipal ocupado por Juan Lebrón; y por el OESTE, en dos alineaciones, una de siete punto cincuenta y cinco (7.55) metros con la Calle Doctor Rufo y la otra en tres punto cero cero (3.00) metros con el solar municipal ocupado por Isaac Newton.------------ ---Enclava edificación.------------------------------------------ ---Inscrita al folio Ciento Cincuenta y Nueve (159) del tomo Trescientos Sesenta y Cinco (365) de Caguas, finca número Nueve Mil Setecientos Cuarenta y Ocho (9,748) del Registro de la Propiedad de Caguas, Sección Primera.------------------------------------------------* [sic].

11. *El día 1 de agosto de 2007 la parte demandante, Banco Popular de Puerto Rico, y la parte demandada, José Ángel Velázquez Grau y Eileen Giselle Ruiz Fernández, suscribieron un Contrato de Préstamo mediante el cual la parte demandante le concedió a la parte demandada un préstamo a término por la suma principal de $70,000.00.* [sic].

12. *El mismo 1 de agosto de 2007 la parte demandada, José Ángel Velázquez Grau y Eileen Giselle Ruiz Fernández, suscribió un Pagaré #2557584–9003 por la suma principal de $70,000.00 a la orden del Banco Popular. Se acordó que el préstamo sería pagadero en 180 pagos mensuales consecutivos de $703.32, todos que incluyen intereses, comenzado el día 1 de septiembre de 2007. Se acordó, también que el balance insoluto de la Suma Principal devengará intereses a razón de una tasa de interés fija de 8.710% anual y de ocurrir algún incumplimiento devengará intereses a razón de una tasa de interés fija de 11.710%.* [sic].

13. *Para garantizar el pago de lo adeudado, la demandada entregó en prenda el siguiente pagaré que la parte demandante tiene en su poder como creedor pignoraticio:*

   **a.** *Pagaré suscrito por las partes codemandadas, José Ángel Velázquez Grau y Eileen Giselle Ruiz Fernández, por la suma principal de $70,000.00,*

*con vencimiento A LA PRESENTACIÓN, pagadero a la orden del Banco Popular o a su Orden, garantizado mediante Escritura de Hipoteca Número 55 de fecha 1 de agosto de 2007, ante el Notario Público Rafael J. Velázquez Villares.*

*El pagaré descrito en este inciso grava la siguiente propiedad:*

*---URBANA: PROPIEDAD HORIZONTAL: Unidad residencial marcado con el número ciento uno (101) del bloque (Cluster) "A" del Edificio C (Sol) del Régimen de Propiedad Horizontal conocido como Condominio Bosque del Mar sito en el Barrio Zarzal del Municipio de Río Grande, Puerto Rico. Consta de planta con un área aproximada de construcción de MIL DOSCIENTOS NUEVE PUNTO SETENTA Y TRES (1,209.73) PIES CUADRADOS, equivalentes a CIENTO DOCE PUNTO TREINTA Y NUEVE (112.39) METROS CUADRADOS, colinda por el NORTE, con áreas comunes, por el SUR, con área de estacionamiento, por el ESTE, con áreas de entrada y pasillo del bloque A y por el OESTE, con áreas comunes. Esta unidad es el modelo F. Su entrada es al lado Este en el primer piso del edificio que da al área de la sala, comedor que a su vez da al balcón en el lado Norte y a una cocina en el lado Sur. Consta de dos (2) dormitorios con clóset, uno de ellos máster con baño y balcón, dos (2) clósets en el área del pasillo, uno de ellos para laundry y un baño en el pasillo que conecta a los dormitorios. Tiene los estacionamientos número uno (1) y número dos (2). Tiene una participación de cero punto seis mil setecientos setenta y cuatro por ciento (0.6774%).-------------------------------------------------------*

*---Consta inscrita en el Registro de la Propiedad de Carolina, Sección Tercera al folio 158 del tomo 486 de Río Grande, finca número 26,435, inscripción primera.-----------------------------------------* [sic].

14. *El día 11 de abril de 2011, la parte demandada, José Ángel Velázquez Grau y Eileen Giselle Ruiz Fernández, suscribió un Pagaré #2557584–9004 por la suma principal de $25,000.00 a la orden del Banco Popular. Se acordó que el préstamo sería pagadero en 84 pagos mensuales consecutivos de $207.62, todos que incluyen intereses, comenzando el día 11 de mayo de 2011. Se acordó, también, que el balance insoluto de la Suma Principal devengará intereses a razón de una tasa de interés fluctuante de 7% sobre la tasa de interés primario.* [sic].

15. *La parte demandada reconoce haber incumplido con su obligación hacia el Banco Popular y mediante el presente acuerdo reconoce adeudar solidariamente a este último:*

    a. *del préstamo 2557584-9002 un balance de principal de $118,868.34, más intereses al 22 de febrero de 2013 de $4,405.04, más $321.71 de una cuenta escrow, más $25.58 de intereses que se devengan diariamente a partir del 23 de febrero de 2013;*

    b. *del préstamo 2557584-9003 un balance de principal de $56,690.13, más intereses al 22 de febrero de 2013 de $2,727.48, más $16.14 de intereses que se devengan diariamente a partir del 23 de febrero de 2013;*

c. *del préstamo 2557584-9004 un balance de principal de $20,238.08, más intereses al 22 de febrero de 2013 de $945.01, más $5.76 de intereses que se devengan diariamente a partir del 23 de febrero de 2013. Además, adeuda a la parte demandante las costas, gastos, y desembolsos del litigio, al igual que el diez porciento (10%) en honorarios de abogados correspondientes al pagaré, según pactado.* [sic].

16. *Los codemandados reconocen que dichas deudas son reales y precisas y están vencidas, líquidas y exigibles y son las que le adeudan al Banco Popular.* [sic].

17. *En vista de los hechos antes expuestos, los codemandados, José Angel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, y el demandante, Banco Popular de Puerto Rico, han acordado un plan de pago por un periodo de doce (12) meses ("período de pago"), comenzando el día 19 de diciembre de 2013 y terminando el día 19 de noviembre de 2014, los demandados pagarán al Banco Popular la suma de $1,500.00 mensuales. Los pagos mensuales serán efectuados dentro de los primeros quince (15) días de cada mes. Estos pagos serán acreditados al principal, mientras que los intereses se continuarán acumulando. Al finalizar el período de pago vienen obligados a efectuar el pago de la última mensualidad y a cancelar el balance total de la deuda al 19 de noviembre de 2014, ya sea mediante pago en satisfacción de la deuda, la venta de la propiedad hipotecada o mediante un refinanciamiento previamente obtenido de otra institución financiera o con el producto de la renta a percibirse. Las partes estipulan que no empecé lo antes acordado, los demandados podrían finiquitar el total de la deuda, sujeto a la aprobación y entera discreción del Banco Popular.* [sic].

18. *Los demandados se comprometen a pagar cualquier cantidad adeudada al día de hoy y que se acumule en un futuro en la cuenta Escrow.* [sic].

19. *De igual manera, el demandado le representa al Banco Popular que al día de hoy no adeuda cuantía alguna al Centro de Recaudaciones e Ingresos Municipales ("CRIM") y/o cualquier correspondiente seguro.* [sic].

20. *Si los codemandados, José Angel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/e Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, dejaran de satisfacer un mínimo de dos (2) pagos consecutivos dentro del período de pago, ello constituirá incumplimiento con los términos del presente acuerdo y será razón suficiente para que el Banco Popular proceda, sin necesidad de dar notificación alguna a los codemandados, José Angel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, a ejecutar el bien inmueble antes descrito y proceder a la venta en pública subasta del inmueble hipotecado.* [sic].

21. *Los codemandados, José Angel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, aseguran que actualmente no están percibiendo frutos civiles (rentas) de la referida propiedad gravada. De alquilarse la propiedad gravada, pues entonces será responsabilidad de los codemandados notificar y remitir el pago total por concepto de rentas al Banco Popular.* [sic].

22. *Además, los codmandados José Angel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Gíselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, pagarán en o antes del vencimiento del presente acuerdo la suma total de $1,250.00, por concepto de gastos y honorarios de abogado incurridos para la redacción del presente acuerdo. La parte demandada entiende, acepta y reconoce que todo y cualquier pago que emita la parte demandada al Banco Popular por concepto del pago mencionado en este párrafo, no se deberá entender bajo ningún concepto y de ninguna forma que el bufete de abogados aquí suscribiente ni ninguno de sus abogados los representa o los ha representado legalmente a los demandados.* [sic].

23. *No obstante, de incumplir con cualquiera de las disposiciones antes mencionadas, los codemandados, José Angel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, pagarán, además de las sumas adeudadas, hasta el diez por ciento (10%) de los pagarés, conforme a lo pactado.* [sic].

24. *Los demandados reconocen y aceptan que discutieron a cabalidad y fueron orientados en torno al presente acuerdo por la Lcda. Daliana Ramos, con suficiente tiempo con anterioridad a la firma del presente acuerdo, y representan entender, comprender y estar de acuerdo con el presente Acuerdo.* [sic].

25. *Los codemandados, José Ángel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, reconocen que los términos del presente acuerdo no constituyen una novación extintiva de las obligaciones contraídas hacia el Banco Popular.* [sic].

26. *Que los codemandados, José Ángel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, sus familiares, herederos, albaceas, cesionarios, apoderados, dependientes, amigos o relacionados, renuncian y desisten, de cualquier reclamación o causa de acción y los remedios bajo cualquier ley de Puerto Rico o Federal, incluyendo aquellas relacionadas con o que pueda alegarse que han surgido relacionado a los préstamos concedidos y/o a la demanda radicada el día el 6 de marzo de 2013 y/o los hechos alegados en la Reconvención, la cual fue radicada en el 13 de mayo de 2013, y otorgan el más completo relevo por cualquier reclamación o causa de acción que tengan o puedan tener o puedan haber tenido que **esté** relacionada directa o indirectamente con los hechos alegados en la demanda radicada el día el 6 de marzo de 2013 y/o y en los hechos alegados en la Reconvención del caso de epígrafe, los remedios, ya sea en derecho o equidad, en contrato o daños y perjuicios, contra la parte demandante, sus subsidiarias, afiliadas o predecesoras, (en adelante "las afiliadas") y sus respectivos directores, oficiales, empleados, familiares, agentes, representantes, aseguradores, fiadores o garantizadores (en lo adelante los "Representantes"). **Los codemandados**, José Ángel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, y sus familiares, **se comprometen a no instar reclamación alguna** ante foros administrativo, judiciales o de otra naturaleza en contra del Banco Popular, sus subsidiarias, hermanas, afiliadas predecesoras, sus directores, oficiales, agentes,*

*representantes o aseguradoras,* ___relacionada directa o___ ___indirectamente con la demanda radicada el día el 6___ ___de marzo de 2013 y/o los hechos alegados en la___ ___Reconvención, la cual fue radicada en el 13 de mayo___ ___de 2013___ *(reconvención que los demandados reconocen que desisten con perjuicio).* [sic].

27. *La parte demandada relevan, descargan y exoneran por siempre e incondicionalmente al Banco Popular de Puerto Rico, sucesoras, y a cualquiera de sus agentes, entidades afiliadas, empleados y/o a cualquier persona actuando por, medio o bajo, o con el consentimiento de ellos, de cualquier y todo tipo de acción causa o causas de acción, demanda, daño, reclamación, obligación, responsabilidad, demanda, costos y gastos de cualquier naturaleza, en derecho o en equidad, del pasado o del presente, conocido o desconocido, ahora ya existentes o que en lo sucesivo, con base en su totalidad o en parte en los hechos, sea o no conocido, que prestatario o cualquier tercero podrá ser titulado o que alegan tener derecho a enjuiciar al Banco Popular de Puerto Rico, y/o las entidades antes mencionadas que tengan relación directa o indirectamente con: (i) el préstamo, los documentos del préstamo hipotecario, la Nota y/o Pagaré, este Acuerdo y cualquier otro documento relacionado con el préstamo, o las transacciones previstas, o cualquiera de las acciones u omisiones en relación a ésta, y (ii) cualquier aspecto de las relaciones entre la parte demandante y parte demandada, en el presente acuerdo relativo a cualquiera o a todos los documentos, las transacciones, las acciones u omisiones que aquí se mencionan.* [sic].

28. *Por otra parte, la parte demandada acepta liberar, absolver y descarga para siempre al Banco Popular de Popular Rico, sus respectivas afiliadas, subsidiarias, herederos, oficiales, accionistas, miembros, socios, directores, gerentes, empleados, abogados, contratistas y agentes, y sus respectivos sucesores y cesionarios de cualquier y toda responsabilidad en cuanto a lo alegado en la Reconvención.* [sic].

29. *En virtud de los términos y condiciones de este Acuerdo, la parte demandada acuerda liberar de responsabilidad al Banco Popular de Puerto Rico, sus respectivas afiliadas, subsidiarias, matrices, herederos, oficiales, accionistas, miembros, socios, directores, gerentes, empleados, abogados, contratistas y agentes, y sus respectivos sucesores y cesionarios, y en contra de cualquier tipo de acción, causa de acción, demanda, daño, reclamación, obligación, responsabilidad, demanda, costos y gastos de cualquier naturaleza, en derecho o en equidad, del pasado o del presente, conocido o desconocido, ahora ya existentes o que en lo sucesivo, con base en su totalidad o en parte en los hechos, sea o no conocido, que el prestatario o cualquier tercero podrá ser titulado o que alegan tener derecho a enjuiciar al Banco Popular de Puerto Rico, y/o las entidades antes mencionadas que hayan tenido y/o tengan relación directa o indirectamente con lo alegado en los hechos alegados en la Demanda radicada el día el 6 de marzo de 2013 y/o los hechos alegados en la Reconvención, la cual fue radicada en el 13 de mayo de 2013.* [sic].

30. *La parte demandante reconoce, acepta y está consciente que los demandados renuncian y/o desisten de todo y cualquier reclamación que tengan o puedan tener, relacionado a lo alegado en la Reconvención e instada en el caso núm. ECD 2013-0238 (402), así como también renuncian a reclamar cualquier alegado derecho, si*

*alguno, que los demandados puedan tener en la referida reconvención.* [sic].

31. *La parte demandada por la presente releva, exonera y para siempre descarga a la parte demandante de todas las reclamaciones o causas de acción que surjan por cualquier motivo o por razón de cualquier daño o pérdida a la propiedad o a la persona, morales o materiales, así como daños especiales que la parte demandada alegar haber sufrido o que de aquí en adelante pueda sufrir como consecuencia y/o raíz de los hechos expresados en la demanda y/o reconvención radicada en este caso.* [sic].

32. *La parte demandada acepta reconoce y entiende que desiste con perjuicio de su Reconvención contra el Banco Popular y entiende y acepta que no volverá a reclamarle al Banco Popular sobre todo y cualquier hecho relacionado directa e indirectamente con lo alegado en la Reconvención. Además, la parte demandada desiste de su moción de reconsideración radicada en cuanto a la Sentencia Parcial emitida en el caso de epígrafe.* [sic].

33. *Este Acuerdo tendrá validez para el beneficio de y será vinculante para todas las partes y sus respectivos sucesores, afiliadas, herederos, administradores, representantes, y entidades relacionadas.* [sic].

34. *La parte demandante y los demandados convienen en ejecutar cualquier y todos los documentos que sean necesarios, convenientes o necesarios para llevar a cabo los términos o la intención de este Acuerdo.* [sic].

35. *Si cualquier sección, disposición, párrafo, cláusula o frase en este acuerdo se declara que es ilegal, nula, inválida o inaplicable por un tribunal u otra autoridad competente, las restantes estipulaciones, los párrafos y las demás cláusulas serán divisibles y permanecerán en pleno vigor y efecto.* [sic].

36. *Cada uno de los las personas que ejecuta este Acuerdo y representa que él o ella tiene la facultad y el derecho para consentir a este Acuerdo.* [sic].

37. *Los términos contenidos en este Acuerdo constituyen los únicos, absolutos y exclusivos términos entre las partes y dejan sin efecto cualesquiera otros acuerdos, estipulaciones o entendimientos entre las partes con relación a los asuntos aquí considerados. Las partes expresan que no han descansado en ninguna representación ajena a las expuestas en el presente documento. Los términos de este Acuerdo no pueden ser alterados de manera alguna excepto mediante el consentimiento escrito de las partes aquí comparecientes.* [sic].

38. *Los codemandados, José Angel Velázquez Grau, Eileen Giselle Ruiz Fernández t/c/c Eilein Giselle Ruiz Fernández y la Sociedad Legal de Gananciales Por Ellos Compuesta, voluntariamente, de forma consciente y sin ser coaccionado, han decidido someterse voluntariamente a la jurisdicción de este Honorable Tribunal para todas tos propósitos legales.* [sic].

39. *Las partes consienten además, a que este Honorable Tribunal mantenga jurisdicción y competencia para entender en los trámites de este asunto y velar por el fiel cumplimiento de los términos y condiciones aquí esbozados.* [sic].

> **40.** *Las partes acuerdan y consienten a que este Honorable Tribunal imparta su aprobación al presente Acuerdo y dicte sentencia de conformidad.* [sic].[7]

Estos acuerdos fueron acogidos por el TPI e incorporados por referencia a la *Sentencia* emitida el **7 de enero de 2014**.[8] Por lo que, ordenó el cumplimiento del acuerdo transaccional de pago.

No obstante, el **29 de diciembre de 2014** BPPR presentó una "*MOCIÓN SOLICITANDO EJECUCIÓN DE SENTENCIA*".[9] En esta, señaló que, desde el mes de octubre de 2014, la parte demandada incumplió con el acuerdo transaccional de pago, por lo que interesaba la ejecución de la sentencia. Específicamente, solicitó la venta en pública subasta de los inmuebles hipotecados y dados en garantías.

Varios trámites procesales después, —incluyendo una solicitud de quiebra por la parte demandada, la cual fue desestimada—,[10] se continuó el proceso de ejecución de hipoteca, conforme con la *Sentencia* dictada el 7 de enero de 2014.[11]

Por lo cual, se celebró la primera subasta pública el **30 de enero de 2019**, sin embargo, esta fue declarada desierta.[12]

Por su parte, el **1 de febrero de 2019**, la parte demandada presentó una "*SOLICITUD URGENTE DE PARALIZACIÓN DE SUBASTA Y CELEBRACIÓN DE VISTA EVIDENCIARIA PARA INFORMAR LAS NEGOCIONACIONES REALIZADAS POR LOS CODEMANDADOS CON EL DEMANDANTE EN LA DIVISIÓN DE PRESTAMOS ESPECIALES DE BANCO POPULAR DE PUERTO RICO*" [sic].[13] Entre otras cosas, la parte demandada manifestó que había notificado a BPPR —a través de las Sra. Ivette García Santoni— su interés de llegar un nuevo acuerdo. Expresó, además, que existían

---

[7] *Íd.* págs. 16 – 25. *Énfasis en original.*
[8] Anejo de la *Petición de Certiorari*, pág. 30.
[9] Anejo de la *Petición de Certiorari*, págs. 31 – 35.
[10] Anejo de la *Petición de Certiorari*, págs. 52 – 54.
[11] Anejo de la *Petición de Certiorari*, págs. 55 – 68.
[12] Véase; Anejo de la *Petición de Certiorari*, pág. 150.
[13] Anejo de la *Petición de Certiorari*, págs. 69 – 149.

varias incongruencias registrales que merecían ser dirimidas en una vista evidenciaria, incluyendo la legitimación de BBPR para ejercer el cobro sobre la deuda hipotecaria. Por lo cual, solicitó la paralización de los procesos post-sentencia y la celebración de la vista solicitada.

El **12 de febrero de 2019**,[14] BPPR presentó una moción oponiéndose a la paralización de la subasta y a la vista evidenciaria.[15] **En la misma fecha**, el TPI emitió *Orden* declarando *No Ha Lugar* la solicitud urgente de paralización de subasta.[16] La parte demandada solicitó reconsideración de la *Orden*,[17] sin embargo, luego de que BPPR se opuso,[18] el foro primario declaró la solicitud académica el **14 de febrero de 2019**.[19]

En el ínterin, se celebró la tercera subasta el **13 de febrero de 2019**, y se le adjudicó el inmueble al banco recurrido por la suma de $80,000.00.[20] Por lo que, **en la misma fecha**, BPPR sometió varios escritos, entre ellos: **(1)** *"Moción en Solicitando Desalojo y Lanzamiento"*,[21] **(2)** *"Moción Solicitud de Confirmación de Venta Judicial"*,[22] **(3)** *"Moción sobre cancelación de Gravámenes Posteriores"*.[23]

Por su parte, la parte demandada presentó el **20 de febrero de 2019** una *"Moción Urgentísima en Oposición y Objeción a Venta Judicial y Reiterando Vista Evidenciaria Postsentencia y en Solicitud de Evidencia de Pagaré y Certificación Registral"*.[24] Entre otras cosas, reiteró su solicitud de atención judicial a las presuntas irregularidades y ausencia del valor jurídico en el proceso seguido

---

[14] En el ínterin se celebró la segunda subasta el **6 de febrero de 2019**, la cual fue declarada desierta. *Véase*; Anejo de la *Petición de Certiorari*, págs. 151 – 152.
[15] Anejo de la *Petición de Certiorari*, págs. 154 – 158.
[16] Anejo de la *Petición de Certiorari*, pág. 153.
[17] Anejo de la *Petición de Certiorari*, págs. 159 – 192.
[18] Anejo de la *Petición de Certiorari*, págs. 203 – 205.
[19] Anejo de la *Petición de Certiorari*, pág. 206.
[20] Anejo de la *Petición de Certiorari*, págs. 193 – 194.
[21] Anejo de la *Petición de Certiorari*, págs. 196 – 197.
[22] Anejo de la *Petición de Certiorari*, págs. 198 – 199.
[23] Anejo de la *Petición de Certiorari*, págs. 200 – 202.
[24] Anejo de la *Petición de Certiorari*, págs. 207 – 212.

postsentencia. Además, adujo que se oponía a los escritos presentados por BPPR, y a la venta judicial por incongruencias que debían ser atendidas por el foro primario.

Evaluadas las mociones presentadas por BPPR, el **19 de febrero de 2019** notificada el 21 de febrero de 2019, el TPI confirmó la venta judicial,[25] ordenó la cancelación de los gravámenes posteriores,[26] y el lanzamiento.[27]

El **4 de marzo de 2019**, la parte demandada sometió una moción urgente oponiéndose a la venta judicial y auxilio para la paralización,[28] sin embargo, el foro primario declaró la misma *No Ha Lugar* el **12 de marzo de 2019**.[29]

Inconforme, la parte demandada recurrió ante este Tribunal apelativo mediante el recurso —*KLCE201900497*—.[30] Como resultado, el **10 de mayo de 2019**,[31] un panel hermano revocó la *Orden* recurrida mediante Sentencia, y devolvió el caso para la celebración de la vista evidenciara.[32] Además, dejó sin efecto la orden de lanzamiento.

Luego, el **28 de mayo de 2021** BPPR presentó una "*Moción Solicitando Ejecución de Sentencia y Embargo*".[33] En esencia, alegó que la parte demandada adeudaba las deficiencias originadas en la ejecución, por lo que interesaba recobrar dicha suma.

Luego de varias incidencias procesales, el **13 de octubre de 2022**,[34] el TPI ordenó el embargo solicitado,[35] y la ejecución y el mandamiento correspondiente.[36]

---

[25] Anejo de la *Petición de Certiorari*, pág. 219, 244 – 245.
[26] Anejo de la *Petición de Certiorari*, pág. 219, 255 – 256.
[27] Anejo de la *Petición de Certiorari*, págs. 252 – 253.
[28] Anejo de la *Petición de Certiorari*, págs. 260 – 261.
[29] Notificada el 13 de marzo de 2019.; Anejo de la *Petición de Certiorari*, págs. 262 – 263.
[30] Anejo de la *Petición de Certiorari*, págs. 265 – 302.
[31] Notificada el 13 de mayo de 2019. El Hon. Felipe Rivera Colón fue el juez ponente.
[32] Anejo de la *Petición de Certiorari*, págs. 330 – 341.
[33] Anejo de la *Petición de Certiorari*, págs. 350 – 367.
[34] Notificado el 26 de octubre de 2022.
[35] Anejo de la *Petición de Certiorari*, págs. 390 – 393.
[36] Anejo de la *Petición de Certiorari*, págs. 394 – 395.

Ante ello, el peticionario presentó una *"Urgente Moción en Solicitud de Reconsideración; Reiterando Solicitud de Vista Evidenciaria y el Solicitud de Paralización de Órdenes de Embargo"*.[37] En esencia, reiteró la alegada necesidad de celebrar una vista urgente para dirimir la procedencia del cobro, la ausencia de la deuda, y la alegada mala fe desplegada por BPPR. Dicha solicitud fue declarada *Sin Lugar*, el **1 de noviembre de 2022** notificada el 3 del mismo mes y año.[38]

Es por ello que, el peticionario compareció nuevamente ante este Foro intermedio el **9 de noviembre de 2022** mediante el recurso —*KLCE202201220*—.[39] En esencia, señaló que el TPI erró al: (1) determinar que la venta en pública subasta no extinguió la cuantía dispuesta en la sentencia; y (2) calificar como procedente el cobro de una deficiencia inexistente. Atendido el recurso, este Panel Especial emitió una *Sentencia* el **28 de abril de 2023**,[40] en la cual, se determinó que el primer señalamiento de error no fue cometido. No obstante, sobre el segundo error, en lo pertinente, expresamos que:

> *[C]iertamente, al considerar la argumentación del peticionario, con relación a los pagos que presuntamente realizó a la deuda y no fueron computados para fines de determinar la deficiencia que se le imputa, surge una controversia relativa a si puede considerarse líquida la cuantía de dinero reclamada. Es de ver que en su escrito en oposición a recurso de certiorari el BPPR dedicó buena parte de su argumentación al primero de los errores señalados, (con cuya argumentación coincidimos), pero resultó parco en la consideración de este segundo error. Es decir, el recurrido no alzó argumentos relativos a por qué deberíamos considerar que, a diferencia de lo afirmado por la parte peticionaria, la deficiencia a ser pagada por el peticionario en efecto es cierta y determinada.*
> *Por tanto, juzgamos que una determinación final sobre el pago que en concepto de deficiencia deba asumir la parte peticionaria en este caso, requiere precisión sobre la cantidad a pagar, por lo que resulta inevitable la celebración de una vista para que se permita el desfile de prueba a esos solos fines. Es decir, ante la indeterminación del pago final*

---

[37] Anejo de la *Petición de Certiorari*, págs. 398 – 400.
[38] Apéndice de *Certiorari*, pág. 401.
[39] Apéndice de *Certiorari*, págs. 402 – 429.
[40] Anejo de la *Petición de Certiorari*, págs. 430 – 446. El Hon. Nery Enoc Adames Soto fue el juez ponente.

*correspondiente, solo la vía de la vista evidenciaria servirá para precisar la cantidad adeudada. [...].*[41]

Por lo cual, se modificó la determinación del foro primario a los fines de celebrar una vista evidenciaria con el propósito de determinar el monto de la deficiencia que debía pagar la parte demandada. Consecuentemente, se devolvió el caso al foro primario para la continuación de los procedimientos.

Así, pues, el TPI señaló la vista para el **4 de diciembre de 2023**.[42] A la misma, compareció el peticionario **por derecho propio**, el BPPR por conducto de su abogado y en compañía de la Sra. Ivette García Santoni como representante del banco.[43] Sin embargo, la Sra. Eileen Giselle Ruiz Fernández no estuvo presente.[44] Allí, el foro sentenciador dispuso que:

- *[D]ará un último señalamiento se haya o no tomado la deposición.*
- *Las partes coordinaron la deposición para el 14 de diciembre de 2023 a las 10am en la oficina del licenciado Velázquez Grau.*
- *Se señala Vista Evidenciaria para el 10 de abril de 2024 a las 10am en el Salón de Sesiones 701.*
- *De concretarse un acuerdo transaccional antes de esa fecha deberán presentar moción informativa.*
- *Se ordena que se le notifique con copia de esta Minuta a la Lcda. Eileen Ruiz Fernández a la dirección que aparece en RUA.*[45]

El **10 de abril de 2024**,[46] el TPI celebró la vista ordenada por este Tribunal de Apelaciones.[47] A esta, compareció el representante legal del BPPR, y el peticionario, señor Velázquez Grau. Allí, se presentó prueba documental, y BPPR trajo el testimonio de la Sra. Alejandra Ramos Mercado (en adelante: "señora Ramos Mercado o Testigo").

---

[41] Anejo de la *Petición de Certiorari*, págs. 445 – 446.

[42] Anejo de la *Petición de Certiorari*, pág. 448.

[43] La *Sra. Ivette García Santoni* fue la representante designada por BPPR.

[44] *Minuta* de la Vista celebrada el 4 de diciembre de 2023. Véase; Anejo de la *Petición de Certiorari*, págs. 454 – 455.

[45] *Íd.*, pág. 455.

[46] El **14 de diciembre de 2023**, se llevó a cabo la Deposición de la *Sra. Ivette M. García Santoni* —representante de BPPR—. Véase; Anejo 3 del recurso de BPPR, págs. 19 – 141.

[47] Véase; *Transcripción de la Vista* (TPO) celebrada el 10 de abril de 2024. págs. 496 – 597.

En resumen, la señora Ramos Mercado declaró lo siguiente en cuanto a la deuda de la parte demandada:

> *En breve síntesis, la señora Ramos Mercado testificó que desde agosto 2019 labora para BPPR.[48] Manifestó que está asignada a la unidad de préstamos especiales,[49] y que como parte de sus labores utiliza el expediente físico del cliente y la base de datos para ver los balances.[50] En el voir dire realizado por el peticionario,[51] la Testigo adujo que es Oficial de Relación,[52] y adujo que maneja portfolios de préstamos comerciales y los cobros de dichos préstamos.[53] Expresó, además que, si una persona desea conocer el comportamiento de una deuda desde su origen, el documento a solicitar es un "Historial de Pago". Señaló que dicho documento surge de la Base de Datos de BPPR.[54] La Testigo le solicitó al TPI el cobro del balance adeudado.[55]*
> *El peticionario contrainterrogó a la Testigo,[56] y hubo un redirecto.[57]*

**En esa misma fecha**, el TPI emitió una *Resolución*.[58] Esbozó que al **8 de abril de 2024**, la parte demandada le adeudaba al BPPR la **suma total de $276,685.91**, cuya división era de la siguiente forma:

> ***Préstamo 101 – 2557584-9002***
> *Principal: $ 25,268. 34*
> *Intereses: $65,585.59*
> *Honorarios/costas legales: $16,853.93*
> *Interés diario: $9.12*
> ***Préstamo 101 – 2557584-9003***
> *Principal: $ 56,690.13*
> *Intereses: $61,483.26*
> *Honorarios/costas legales: $7,000.00*
> *Interés diario: $19.68*
> ***Préstamo 101 – 2557584-9004***
> *Principal: $ 20[,]238.08*
> *Intereses: $21,920.51*
> *Honorarios/costas legales: $44,658.59*
> *Interés diario: $7.02.[59]*

Por su parte, el **26 de abril de 2024** el peticionario sometió una *"Moción de Reconsideración"*,[60] la cual fue declarada *No Ha Lugar* el **14 de mayo de 2024**.[61]

---

[48] TPO, págs. 511, 512.
[49] TPO, pág. 513.
[50] TPO, pág. 514.
[51] TPO, págs. 515 – 522.
[52] TPO, pág. 516.
[53] TPO, pág. 517.
[54] TPO, pág. 560.
[55] TPO, pág. 562.
[56] TPO, págs. 563 – 593.
[57] TPO, pág. 594.
[58] Notificada el 11 de abril de 2024.; Anejo de la *Petición de Certiorari*, págs. 457 – 459.
[59] Anejo de la *Petición de Certiorari*, págs. 458 – 459.
[60] Anejo de la *Petición de Certiorari*, págs. 462 – 467.
[61] Notificada el 20 de mayo de 2024.; Anejo de la *Petición de Certiorari*, pág. 469.

El **23 de mayo de 2024**, BPPR solicitó el embargo de los bienes en ejecución de hipoteca,[62] aunque el peticionario se opuso,[63] el TPI concedió el embargo el **29 de mayo de 2024**.[64]

No conforme con la determinación, el **31 de mayo de 2024** el peticionario presentó ante el foro *a quo* una *"MOCIÓN URGENTÍSIMA REITERANDO NUESTRA OPOSICIÓN A SOLICITUD DE EMBARGO BIENES MUEBLES EN EJECUCIÓN DE SENTENCIA Y SOLICITUD DE PARALIZACIÓN DE LOS PROCESOS DE EMBARGO"*,[65] sin embargo, la misma fue declarada *No Ha Lugar* el **4 de junio de 2024**.[66]

Inconforme con el proceder del TPI, el peticionario recurrió ante nos el **20 de junio de 2024**. Mediante el *certiorari* epígrafe, señaló la comisión de los siguientes errores:

> *PRIMER SEÑALAMIENTO DE ERROR PLANTEADO: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, COMETIÓ ERROR MANIFIESTO EN DERECHO, Y ABUSÓ DE SU DISCRECIÓN AL OMITIR LA CONSIDERACIÓN DEL APLICABLE ESTÁNDAR DE PESO PROBATORIO, LA ADMISIBILIDAD PROBATORIA, Y REALIZAR DETERMINACIONES DE HECHO EN CONTRAVENCIÓN AL DERECHO VIGENTE Y LA JURISPRUDENCIA APLICABLE.*
>
> *SEGUNDO SEÑALAMIENTO DE ERROR PLANTEADO: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y COMETIÓ ERROR MANIFIESTO EN DERECHO AL CALIFICAR COMO PROCEDENTE COBRO DE UNA DEFICIENCIA QUE NO CORRESPONDE A UNA DEUDA LIQUIDA NI EXIGIBLE; QUE CONFORMA UNA INSTANCIA DE ENRIQUECIMIENTO INJUSTO; Y UTILIZAR PARA TAL CALIFICACIÓN PRUEBA INADMISIBLE E IMPERTINENTE.*
>
> *TERCER SEÑALAMIENTO DE ERROR PLANTEADO: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, ABUSÓ DE SU DISCRECIÓN Y COMETIÓ ERROR MANIFIESTO EN DERECHO AL CONFUNDIR EL PESO PROBATORIO Y ALCANZAR CONCLUSIONES FÁCTICAS UTILIZANDO PRUEBA QUE NO HABÍA SIDO PRODUCIDA PREVIAMENTE, EN CONTRAVENCIÓN AL MANDATO EXPRESO DEL FORO APELATIVO.*
>
> *CUARTO SEÑALAMIENTO DE ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, ABUSÓ DE SU DISCRECIÓN Y COMETIÓ ERROR MANIFIESTO EN DERECHO AL ADJUDICAR LOS MÉRITOS DE SU CONTROVERSIA FUNDAMENTADA EN LA CUESTIÓN ÚLTIMA TESTIFICADA POR PERITO.*

---

[62] Anejo de la *Petición de Certiorari*, págs. 471 – 472.
[63] Anejo de la *Petición de Certiorari*, págs. 473 – 481.
[64] Notificada el 30 de mayo de 2024.; Anejo de la *Petición de Certiorari*, págs. 482 – 485.
[65] Anejo de la *Petición de Certiorari*, págs. 486 – 494.
[66] Notificada el mismo día.; Anejo de la *Petición de Certiorari*, pág. 495.

De su parte, el **2 de agosto de 2024**, BPPR presentó el *"Escrito de Mostración de Causa"*.

Con el beneficio de la comparecencia de las partes, damos por sometido el asunto.

**-II-**

**-A-**

El recurso de *certiorari* es un medio procesal de carácter discrecional, que a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[67] Así, se entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[68]

Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —*vía certiorari*— las resoluciones y órdenes emitidas por los tribunales de instancia:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [...].[69]*

Bajo el carácter de discrecionalidad, la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes criterios para mostrar causa o para la expedición del auto de *certiorari:*

> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*

---

[67] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019).; *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).
[68] *García v. Asociación,* 165 DPR 311, 321 (2005).
[69] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1.

*(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*

*(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*

*(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*[70]

En ese sentido, el Tribunal Supremo de Puerto Rico ha dispuesto que:

*[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[71]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable ni perjudica los derechos sustanciales de las partes, deberá prevalecer el criterio del juez de instancia a quien le corresponde la dirección del proceso.[72]

**-III-**

Como esbozamos anteriormente, el peticionario nos plantea la comisión de cuatro (4) errores por parte del TPI. No obstante, somos del criterio que ninguno de ellos fue cometido.

En el caso epígrafe, el peticionario ha tenido tiempo y oportunidades de descubrir prueba, contrainterrogar testigos, presentar prueba a su favor y fundamentar sus argumentos. Cabe señalar, que la *Sentencia* por acuerdos fue dictada el 7 de enero de 2014, y que ante el incumplimiento por la parte demanda fue que inició todo el proceso antes esbozado. Por lo cual, conforme a los hechos del caso y al derecho aplicable, la Resolución recurrida constituye una decisión dentro del claro ejercicio de discreción

---

[70] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.

[71] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).; *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[72] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 434 – 435 (2013).

conferido a los tribunales de instancia y a su facultad para manejar los casos de la manera que entiendan más adecuada. Es por ello que, no encontramos fundamento para expedir el auto de *certiorari* solicitado.

Ante la falta de prueba por parte del peticionario —tendente a demostrar que el foro recurrido abusó de su discreción o actuó con perjuicio, parcialidad o error manifiesto—, somos del criterio que el TPI no abusó de su discreción ni fue irrazonable en forma alguna. Así, en el ejercicio de la sana discreción que nos permite la Regla 40 del Tribunal Apelaciones, *supra* resolvemos denegar el presente recurso de *certiorari*.

**-IV-**

Por los fundamentos antes expuestos, **denegamos** el auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones